UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                        :
BRUCE SCHWARTZ et al.,                                  :
                                                        :               13 Civ. 769 (PAE)
                                    Plaintiffs,         :
                                                        :          OPINION & ORDER
                    -v-                                 :
                                                        :
HSBC BANK USA, N.A.,                                    :
                                                        :
                                    Defendant.          :
                                                        :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Plaintiff Bruce Schwartz ("Schwartz") brings this putative class action against defendant

HSBC Bank USA, N.A. ("HSBC" or "defendant"), alleging that certain practices of and

disclosures by HSBC in connection with its credit card billing practices violated the Truth in

Lending Act ("TILA" or "the Act"), 15 U.S.C. §§ 1601 *et seq*.  In particular, Schwartz alleges

that, on the monthly billing statements it sent him, HSBC inaccurately or incompletely disclosed

the annual interest rate and the "balance subject to interest."  Schwartz also claims HSBC

improperly charged late fees and interest on payments he submitted by mail during one billing

cycle.

        HSBC moves to dismiss the Amended Complaint, under Federal Rule of Civil Procedure

12(b)(6), for failure to state a claim, or, alternatively, to strike certain class allegations pursuant

to Federal Rule of Civil Procedure 23(d)(1)(D).  For the reasons that follow, the Court grants

HSBC's motion to dismiss.

## I. Background

### A.     Facts[1]

In or about November 2011, Schwartz opened a credit card account with HSBC, a corporation with principal operations in New York City.  Am. Compl. ¶¶ 9, 11; Schwartz Br. 1. Schwartz claims that HSBC made improper disclosures in three monthly billing statements on this account:  those with closing dates of January 3, 2012 (the "January Statement") (Am. Compl. Ex. A), February 3, 2012 (the "February Statement") (*id.* at Ex. B), and March 2, 2012 (the "March Statement") (*id.* at Ex. C).  *Id.* ¶¶ 44–50.  Schwartz also claims that HSBC improperly charged him a late fee (later reversed) on a payment he made during the billing period that closed October 3, 2012 (the "October Statement") (*id.* at  Ex. D), whereas in fact his payments had complied with the bank's stated policy.  *Id.* ¶¶ 15–15.[2]  The Court describes each claim in turn.

#### 1.     Disclosure Deficiencies

##### a.     *Failure to Properly Disclose Whether APR Was Variable or Fixed*

The second page of each of Schwartz's monthly statements contained a chart entitled "Interest Charge Calculation."  Running vertically, the chart listed, under "Type of Balance," the three lines of credit available to Schwartz on his HSBC Platinum MasterCard: Cash Advances,

---

[1] The facts related herein are drawn from the Amended Complaint ("Am. Compl."), Dkt. 13.  For the purpose of deciding HSBC's motion to dismiss, the Court accepts as true the facts alleged by Schwartz and draws all reasonable inferences in Schwartz's favor.  *See, e.g.*, *Galiano v. Fidelity Nat'l Title Ins. Co.*, 684 F.3d 309, 311 (2d Cir. 2012); *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

[2] The Amended Complaint contains incorrectly numbered paragraphs on pages 4 and 5, with paragraphs numbered as 15, 16, 15, and 17.

Purchases, and Balance Transfers.  *See* Am. Compl. Ex. A–C.[3]  Running horizontally, the chart

presented, for each type of balance, the (1) "Annual Percentage Rate (APR)" applicable to that

balance, (2) the "Balance Subject to Interest Rate," and (3) the "Interest Charge."  *Id.*  Just above

the chart, the statement stated:  "Your Annual Percentage Rate (APR) is the annual interest rate

on your account."  *Id.* (boldface type omitted).  Each chart set forth, under the APR header, the

APR applicable to the line of credit in question.  In each case, Cash Advances were subject to a

21.99% interest rate, whereas Purchases and Balance Transfers were subject to a 0.00% interest

rate.  *Id.*  Immediately following those stated interest rates, each statement noted whether each

APR was variable, *i.e.*, whether the rate was subject to adjustment by the bank.  It did so, where

this was the case, by following the rate with a "(v)."  An explanatory footnote, located at the

bottom of the chart, stated, "*v=Variable Rate*."  *Id.*

  The charts presented inconsistent information as to which APR rates were variable.  The

February Statement stated that all three APRs were variable rates.  Am. Compl. ¶ 45, Ex. B.

However, the March Statement stated that only the Cash Advances APR was a variable rate.  *Id.*

¶ 46, Ex. C.  Schwartz argues that, because the terms of his agreement with HSBC "did not call

for any modification" of the APR between the February and March statements, the February and

March statements "contradict one another" and that one of them therefore must violate 15 U.S.C.

§ 1637(b)(5), which requires disclosure of the periodic rate, the balance to which it is applied,

and the corresponding nominal APR.  *Id.* ¶ 47.  Schwartz also alleges that this disclosure violated

12 C.F.R. § 1026.5(c) and § 226.5(c), which require that disclosures reflect the "legal obligations

between the parties."  *Id.*  Schwartz further asserts that, if the APR for Purchases and Balance

---

[3] The monthly statements in question were attached to the Amended Complaint.  On a motion to dismiss, the court may consider "any written statement attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference."  *Chambers*, 282 F.3d at 153.

Transfers was indeed variable, as the February Statement stated, the March Statement violated 12 C.F.R. § 1026.7(b)(4)(i) and § 226.7(b)(4)(i), which mandate disclosure that such rates "may vary." *Id.* ¶ 48.

Schwartz does not claim that HSBC actually *charged* him an incorrect APR on any of his statements. Rather, Schwartz acknowledges that he was billed consistent with his card member agreement, which provided for a 12-month "introductory APR" of 0.00% for Purchases and Balance Transfers and a 21.99% variable APR for Cash Advances. Schwartz instead claims that the incorrect disclosure was a technical, but actionable, violation of TILA.

> b.    *Failure to Properly Disclose Balance Subject to Interest Rate*

Schwartz also claims that the February and March statements did not properly disclose the "balance subject to interest rate." In a chart entitled, "Summary of Account Activity," the February Statement stated that the "new balance" on Schwartz's account as of February 3, 2012 was $528.70 (which was calculated by taking the $673.40 balance due as of January 3, 2012, subtracting $150 in payments Schwartz had made during the period covered by the February statement, and adding $5.30 in interest charged). *See* Am. Compl. Ex. B. Of this, the February Statement listed $284.02 as the "balance subject to interest" for Cash Advances; for Purchases and Balance Transfer, it listed a zero "balance subject to interest." *See id.* ¶ 49, Ex. B. The March Statement stated that the "new balance" on Schwartz's account as of March 2, 2012 was $431.81 (which was calculated by taking the $528.70 balance due as of February 3, 2012, subtracting $100 in payments and $25 in "[o]ther [c]redits," and adding $25 in a fee for a late-charge assessment and $3.11 in interest charged). *See id.* Ex. C. Of this, the March Statement listed $184.65 as the "balance subject to interest" for Cash Advances; for Purchases and Balance Transfers, it again listed a zero "balance subject to interest." *Id.* ¶ 50, Ex. C.

As to the March Statement, Schwartz argues that, because he had not paid his outstanding balance, it was incorrect to report as zero the amount of his Purchases subject to interest. He does not concretely explain what the specific number should be, but maintains it should have been a positive number. In other words, he alleges, although his outstanding balances in the categories of both Purchases and Balance Transfers were subject to a 0.00% interest rate, and therefore HSBC was correct to calculate that no interest was due, as a technical matter, *an interest rate* was still being applied to his positive balance, and it was inaccurate to state that the balance was zero. In so stating, Schwartz alleges, HSBC violated TILA, specifically 15 U.S.C. § 1637(b)(5)[4] and 12 C.F.R. § 1026.5(b)(5) and § 226.5(b)(5). *See id.* ¶¶ 49–50. Again, Schwartz does not claim HSBC *charged* him an incorrect rate, just that the statements "erroneously disclosed" his balances. *Id.*

### 2.    Improperly Charging a Late Fee for a Mailed Payment

Finally, Schwartz alleges that HSBC improperly charged him a late fee for a monthly payment that, he states, conformed to HSBC's stated payment policies. After the October Statement, Schwartz owed a $25 minimum payment toward his outstanding balance of $119.46; the $25 minimum payment was due October 28, 2012. *See* Am Compl. Ex D. Because October 28, 2012 was a Sunday, the bank was not receiving payments by mail that day. *Id.* ¶¶ 15, 19. Schwartz made two payments towards his outstanding balance. First, in the days before the due date, he mailed a $25 check with a payment coupon in a bank-specified envelope to meet the minimum charge; he alleges that this payment conformed to "the requirements in the Payment

---

[4] The Amended Complaint alleges this disclosure violates § 1637(b)(5), which requires that creditors disclose each periodic rate, the balance to which it is applied, and the corresponding nominal APR. In his brief opposing dismissal, Schwartz alleges the same behavior is instead a violation of § 1637(b)(7), which requires that creditors disclose the balance "on which the finance charge was computed."

Instructions." *Id.* ¶ 15.[5]  Around the same time, Schwartz states, he made another payment of

$50, accompanied by its own payment coupon, sent in another bank-specified envelope; he

alleges that this payment also conformed to HSBC's requirements.  *Id.* ¶ 17.  HSBC, however,

charged Schwartz a $19 late fee, which is reported on the next (November) statement as having

been assessed on October 28, 2012.  On the November statement, HSBC reported $75 in total

payments as having been received on Monday, October 29, 2012.  *Id.* ¶ 18, Ex. E.

> In its monthly statements, HSBC included the following payment instructions:
>
> Payments should be mailed with a single payment coupon to the payment address
> shown on the front of this billing statement.  Payments must be made by a single
> check or money order payable in U.S. dollars and drawn on a U.S. Institution . . .
> Payments received on any day at the payment address shown on the front by 5:00
> p.m., in that payment address time zone, will be credited to your Account as of
> the date of receipt. . . . All payments received after 5:00 p.m. of the time zone
> indicated will be credited the next day. Crediting payments to your Account may
> be delayed up to five days if the payment is not made as described above, or, is
> not mailed to and received at the address provided for remittance; is not
> accompanied by the payment coupon; is received in an envelope other than the
> envelope provided for remittance; is not accompanied by the payment coupon; is
> stapled, folded, or paper clipped; or includes multiple payment coupons or checks.

*Id.* ¶ 16.

Schwartz argues that because HSBC was not receiving or accepting payments by mail on

the Sunday, October 28, 2012 due date, it was required by law to accept his payment the

following day and to treat it as timely.  *Id.* ¶¶ 52–53.  Schwartz notes that 15 U.S.C. § 1637(o)(2)

requires financial institutions to extend due dates by one business day when they fall on a

Sunday or holiday.  Positing that HSBC imposed the late fee based on its having treated

payments that were received on October 29, 2012, as late, Schwartz alleges that this charge

violated TILA.  He also alleges that the bank violated TILA when it failed to notify Schwartz,

---

[5] The second ¶ 15.  *See supra*, note 2.

within the statutory time period of 60 days, that the late fee had been charged in error.  *Id.* ¶ 54; *see* 15 U.S.C. §§ 1637(o)(2), 1640(b).

Although Schwartz requests actual damages for the improper late fee in his filings, his counsel, at argument, acknowledged that Schwartz suffered no actual damages.  Questioned by the Court, Schwartz's counsel stated that:  "HSBC, because of super storm Sandy, actually credited Mr. Schwartz an amount in the amount of the late fee. . . . There are no actual damages that we can ascertain."  *See* 9/11/13 Oral Argument Transcript ("Tr.") 37–38.  Schwartz's counsel argued that Schwartz was nevertheless eligible for statutory damages.  *Id.*

With respect to each allegation of a violation of TILA, Schwartz alleges that there are other cardholders who experienced the same conduct.  He seeks statutory damages on behalf of himself and the putative class, together with costs and reasonable attorneys' fees.

### B.    Procedural History

On February 1, 2013, Schwartz filed suit against HSBC, claiming the bank's failures to disclose required information and an improper late fee violated TILA's regulations.  Dkt. 1.  On April 26, 2013, HSBC filed a motion to dismiss, Dkt. 7, a supporting memorandum of law, Dkt. 12, and the accompanying Declaration of Scott Maciejewski ("Maciejewski Decl."), Dkt. 9.

On May 17, 2013, Schwartz filed the Amended Complaint and accompanying exhibits.  Dkt. 13.  On June 7, 2013, HSBC filed a motion to dismiss the Amended Complaint, Dkt. 14, and a supporting memorandum of law ("HSBC Br."), Dkt. 15.  On June 21, 2013, Schwartz filed an opposing brief ("Schwartz Br.").  Dkt. 16.  On July 3, 2013, HSBC filed a reply ("HSBC Reply Br.").  Dkt. 18.  On Sept. 11, 2013, the Court heard argument on the motion to dismiss.

**II.      Applicable Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**III.     Discussion**

Enacted in 1969, TILA was designed to promote informed use of credit, through fair and transparent lending practices. *See* 15 U.S.C. § 1601(a); *Chase Bank USA, N.A. v. McCoy*, 131 S. Ct. 871, 874 (2011). Rather than regulate the substantive terms on which creditors can offer or manage a financial product, TILA primarily requires "meaningful disclosure." *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555 (1980); *Gambardella v. G. Fox & Co*., 716 F.2d 104, 110 (2d Cir. 1983). TILA regulates disclosures by a creditor to a consumer throughout their financial relationship: during solicitation and application; at signing; during each billing cycle; and at renewal. *See* 15 U.S.C. § 1637(a)–(d).

Relevant here, creditors must disclose, among other things, "[t]he conditions under which a finance charge may be imposed," "[t]he method of determining the amount of the finance charge," and, "[w]here one or more periodic rates may be used to compute the finance charge, each such rate . . .  and the corresponding nominal annual percentage rate."  *Id.* § 1637(a)(1), (a)(3) & (a)(4).  The disclosure of the Annual Percentage Rate, or APR, provides "a typical, and therefore useful, comparative measure of the price of the credit the company sells to the consumer," consistent with TILA's goal of informing consumers.  *Barrer v. Chase Bank USA*, 566 F.3d 883, 887 (9th Cir. 2009); *see* 15 U.S.C. §§ 1605(a) & 1606(a)(2).[6]  TILA "is to be construed liberally" in favor of the consumer.  *See Schnall v. Marine Midland Bank*, 225 F.3d 263, 267 (2d Cir. 2000); *N.C. Freed Co. v. Board of Governors of the Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir. 1973).

For the reasons that follow, Schwartz's three allegations of TILA violations fail to state a claim.  First, HSBC's two alleged disclosure lapses (with regard to the variable rate and the balance subject to interest), which Schwartz concedes did not cause actual damages, are not ones for which statutory damages are available.  Second, these two alleged lapses are hypertechnical defects that, under Second Circuit case law, do not supply a basis on which a plaintiff can recover.  Finally, Schwartz's third claim of an improper late fee charge fails because, as Schwartz concedes, HSBC later reversed the late fee.  Schwartz therefore suffered no actual damages, and the provision under which TILA brings that claim is not one that triggers statutory damages.

---

[6] Authority to "prescribe regulations to carry out the purposes" of the Act is now vested in the Consumer Financial Protection Board.  15 U.S.C. § 1604.  These implementing regulations are known as Regulation Z.  *See* 12 C.F.R. §§ 226 *et seq*.

### A.  Schwartz's Disclosure Allegations Fail to State a Claim.

Schwartz admits that HSBC's alleged disclosure lapses caused him no actual damages, because (1) notwithstanding the inconsistent statements on his monthly statements about whether a variable rate applied, HSBC billed him in accord with his introductory cardmember agreement; and (2) notwithstanding HSBC's alleged error in listing certain balances as subject to interest, the interest rate to which HSBC reported he was subject was 0.00%, which resulted in an accurate calculation that he owed no interest on the stated sums.  He argues instead that he is eligible for an award of statutory damages.  However, a creditor is liable for statutory damages for a failure to comply only with designated provisions of TILA.  *See* 15 U.S.C. § 1640(a). Schwartz claims the disclosure deficiencies—the (1) contradictory disclosure of the APR and (2) the incomplete disclosure of his "balance subject to interest"—are among those for which such damages are authorized.

Schwartz is correct that violations of disclosure obligations under paragraph (4) through (13) of 15 U.S.C. § 1637(b) can trigger a statutory award.  *Id.* § 1640(a)(4).  Here, Schwartz claims that HSBC's disclosures violated paragraphs (b)(5) and (b)(7).[7]  But even accepting as true the facts Schwartz pleads, the disclosures on his monthly billing statements did not violate either of those subsections.

Paragraph (b)(5) requires the creditor on open-ended credit plans—which the parties agree Schwartz had— to transmit specific information at the close of each billing cycle.  This information includes:

> Where one or more periodic rates may be used to compute the finance charge, each such rate, the range of balances to which it is applicable, and . . . the

---

[7] The Court treats *arguendo* Schwartz's claim of a violation of § 1637(b)(7) as within the scope of his pleadings.  In fact, the Amended Complaint does not allege any such violation.  Schwartz first made this claim in his brief in opposition to the motion to dismiss.  *See* Schwartz Br. 3, 10.

corresponding nominal annual percentage rate determined by multiplying the periodic rate by the number of periods in a year.

*Id.* § 1637(b)(5).

Schwartz argues that the inconsistency between his February and March Statements—in which one statement stated that his periodic rates were variable ("v") and the other did not—means the rates were inaccurately disclosed, in violation of § 1637(b)(5). But Schwartz misreads that provision. It does not require disclosure of the *variable or fixed status* of a periodic rate. It merely requires the accurate disclosure of the applicable rate, the balance to which it is applied, and the nominal APR. Despite the contradictory statements as to whether Schwartz's periodic rates were or were not variable, Schwartz does not allege that his statements lacked, or misstated, any of these required disclosures.

Schwartz's second theory of wrong suffers from a similar flaw. Schwartz alleges that HSBC's failure to list, as a positive number rather than zero, his existing Purchases "balance subject to interest" violated paragraph (b)(7), which requires a creditor to disclose "[t]he balance on which the finance charge was computed and a statement of how the balance was determined." 15 U.S.C. § 1637(b)(7). But in Schwartz's case, no finance charge was computed for his outstanding Purchases balance, which was subject to 0.00% interest during this period. Therefore, there was no required disclosure under paragraph (b)(7). And the only balance for which a finance charge was computed—Cash Advances at 21.99% interest—was listed correctly. Schwartz's total balance and interest costs were both accurately listed on the first page of each of his monthly statements.

Schwartz alternatively argues that the two faulty disclosures violated implementing Regulation Z. *See supra* p. 9 n.6. He argues that the contradictory disclosures on the February and March Statements as to whether the APR for his Purchases and his Balance Transfers was

subject to a variable interest rate violates 12 C.F.R. §§ 1026.7(b)(4)(i) and 226.7(b)(4)(i), which require disclosure "[f]or variable-rate plans . . . that the annual percentage may vary", and 12 C.F.R. § 1026.5(c) or § 226.5(c), which state generally that "[d]isclosures shall reflect the terms of the legal obligation between the parties." And, he argues, the failure to list as a positive number his "balance subject to interest" violates 12 C.F.R. §§ 1026.7(b)(5) and 226.7(b)(5), which require disclosure of "the balance to which a periodic rate was applied . . . and an explanation of how that balance was determined, using the term Balance Subject to Interest Rate." Schwartz admits that violations of Regulation Z do not themselves support an award of statutory damages, but argues that they may do so here because they "implement" TILA. *See* Schwartz Br. 17.

This argument is unpersuasive. It is well settled that statutory damages are not available for violations of Regulation Z. *See Kelen v. World Fin. Network Nat. Bank*, 763 F. Supp. 2d 391, 393 (S.D.N.Y. 2011) (citing *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987, 991 (7th Cir. 2000)); *see also Litwin v. Chase Bank USA, N.A.*, No. 10 Civ. 9609 (JSR), 2011 WL 2017667, at *4 (May 16, 2011); *Turk v. Chase Manhattan Bank USA, N.A.*, No. 00 Civ. 1573 (CM)(GAY), 2001 WL 736814, at *2 (S.D.N.Y. June 11, 2001). And the notion that statutory damages can be imposed on the theory that Regulation Z "implements" TILA, where TILA itself has not been violated, has been rejected by courts in this district. In *Kelen*, for example, Judge Hellerstein explained that "to read [a particular] Regulation Z requirement[] into [TILA] and to allow the recovery of statutory damages for a violation thereof, would be to flaunt congressional intent." 763 F. Supp. 2d at 394.

It is no answer for Schwartz to observe that Regulation Z contains "similar … language" to the TILA provisions at issue. *See* Schwartz Br. 17. That is, unsurprisingly, often the nature of

an implementing regulation.  But the statute's plain language limits the avenues for recovery of statutory damages; to permit an award of statutory damages based on an implementing regulation that tracks a statutory provision that does not provide for statutory damages would, as *Kelen* observed, flout Congress's intent.  Put differently, having failed to show that HSBC's alleged disclosure lapses violated TILA, Schwartz cannot obtain statutory damages through the back door by relying instead on similarly worded implementing regulations.

Schwartz also may not recover because he fails to adequately allege that HSBC's disclosures violated TILA.  His first allegation, as noted, is that either the February or March Statement improperly denoted whether the APR was variable.  But this claim founders, because Schwartz was subject to a promotional rate.  Under TILA, there is an exception for promotional rates, which must be disclosed only when actually applied.  *See* 12 C.F.R. § 1026.7(b)(4)(ii).  A promotional rate is defined as follows:

> (i) Promotional rate means any annual percentage rate applicable to one or more balances or transactions on an open-end (not home-secured) plan for a specified period of time that is lower than the annual percentage rate that will be in effect at the end of that period on such balances or transactions.

> (ii) Introductory rate means a promotional rate offered in connection with the opening of an account.

12 C.F.R. § 1026.16(g)(2)(i),(ii). This definition disposes of Schwartz's claim, because in neither February nor March was any rate other than 0% interest applied to Schwartz's balance, and this rate was accurately disclosed.

Schwartz counters that the promotional rate exception does not apply because his rate was introductory, not promotional.  Schwartz Br. 6–7.  In the alternative, even if the variable rate was promotional, he argues, it was "actually applied."  Neither argument is convincing.  By its terms, the definition of a promotional rate explicitly encompasses introductory rates.  12 C.F.R.

13

§ 1026.16(g)(2)(ii) ("Introductory rate means a promotional rate offered in connection with the opening of an account."). Thus, even if Schwartz's temporary 0.00% APR is fairly classified as an introductory rate, it is still exempt except to the extent actually applied. And Schwartz's claim that the promotional rate was "actually applied" is not plausible. The statement reports that a 0.00% rate was applied to his existing balances. Schwartz does not explain what is inaccurate about that statement.

Schwartz's second allegation, as noted, is that his statements incorrectly reported a balance of zero as his "balance subject to interest." But TILA mandates the disclosure of outstanding balances "to which a finance charge was *imposed*." 15 U.S.C. § 1637(b) (emphasis added). As the Amended Complaint and the attached monthly statements reflect, HSBC treated Schwartz's outstanding Purchases balance as subject to a 0.00% APR, and as a result, no finance charge was *imposed* on the balance. It is thus exempt from the disclosure. Notably, the Cash Advances balance, as to which a finance charge was *imposed*, was properly listed, and Schwartz does not challenge that disclosure. *See* Am. Compl. Ex. B, C.[8]

As a final basis for its finding that Schwartz's two disclosure claims fail to state a claim, the Court notes that Schwartz alleges only hypertechnical deficiencies. To be sure, at least one court of appeals has held that TILA requires "absolute compliance by creditors . . . and even technical or minor violations of the TILA impose liability on the creditor." *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1199 (9th Cir. 2010) (citation omitted). But in its application of TILA to such types of claims, the Second Circuit has taken a different approach, mostly declining to extend liability to creditors for insignificant or technical violations. *See, e.g.*, *Schnall*, 225 F.3d at 268 (dismissing claim that nondisclosure of a particular rate violated TILA where customer

---

[8] Because Schwartz does not state a claim as to the "balance subject to interest," the Court has no occasion to consider HSBC's alternative argument that this claim is time-barred.

14

did not actually use the product at issue); *Turner v. Gen. Motors Acceptance Corp.*, 180 F.3d 451, 457 (2d Cir. 1999) (recognizing that intent of TILA was to limit creditor liability to "significant violations"); *Gambardella v. G. Fox*, 716 F.2d 104, 118 (2d Cir. 1983) (optional but misleading disclosures, such as reverse side disclosures and failure to use dollar signs before monetary amounts, did not violate TILA). *Cf. Krenisky v. Rollins Protective Servs. Co.*, 728 F.2d 64, 67–68 (2d Cir. 1984) (declining to consider "whether departure from strict compliance with the regulations would be permissible when a violation is both *de minimis* and of benefit to the consumer").

District courts in this circuit have largely also dismissed purely technical claims. *See Karakus v. Wells Fargo Bank*, No. 09–cv–4739 (ENV)(SMG), 2013 WL 1743846, at *10–11 (E.D.N.Y. Apr. 22, 2013) (holding lender's technical violation of providing borrowers with one, rather than two, copies of notice of right to cancel a loan was not an actionable violation, and noting that "the Second Circuit appears to have rejected the 'hypertechnicality' standard"); *Kahraman v. Countrywide Home Loans, Inc.*, 886 F. Supp. 2d 114, 120 n.4, 122 n.6 (E.D.N.Y. 2012) (declining "to follow those other courts that have applied a strict liability standard to TILA, such that even minor or technical violations impose rescission liability on the creditor" in view of the fact that "the Second Circuit has refused to grant statutory damages under TILA for technical inaccuracies unlikely to mislead consumers") (citation omitted); *Stein v. JPMC*, 279 F. Supp. 2d 286, 292 (S.D.N.Y. 2003) (holding that failure, *inter alia*, to disclose that the APR was determined as of the date of the credit card application did not violate TILA); *Hale v. MBNA America Bank, N.A.*, No. 99 Civ. 8831(AGS), 2000 WL 1346812, at *6 (S.D.N.Y. Sept. 18, 2000) (treating balances as zero balances instead of negative balance "is a relatively insignificant component of the balance calculation").

The two disclosure deficiencies Schwartz alleges here are similarly hypertechnical and inconsequential.  Schwartz does not claim that either error—the alleged misdescription of rates on either his February or March statement as variable as opposed to fixed, or the allegedly errant identification of the balance to which a 0% interest rate was applied—affected the charges applied to him or caused him actual confusion about his obligations as a borrower.  He simply points out that under the strictest reading of TILA, HSBC has failed to achieve "absolute compliance."  *See* Schwartz Br. 12.  But, as the Second Circuit has stated, even imperfect disclosures can be "sufficient under the law," *Gambardella*, 716 F.2d at 117, and the purpose of TILA is not to mandate "perfect disclosure, but only disclosure which clearly reveals to consumers the cost of credit."  *Id.* at 118.  The Court declines to permit Schwartz to "misuse TILA 'as an instrument of harassment and oppression against the lending industry.'"  *Hale*, 2000 WL 1346812, at *5 (quoting *Griesz v. Household Bank*, 8 F. Supp. 2d 1031, 1037 (N. D. Ill. 1998)).

**B.  Schwartz Fails to Assert Relief for an Improper Late Fee.**

Schwartz's third claim—that HSBC wrongly imposed a $19 "late fee" for his October 2012 payments—is his most concrete.

Schwartz is quite correct that HSBC would not have been justified in treating a check that arrived at HSBC (as Schwartz alleges his did) on a Sunday (October 28, 2012) as untimely where HSBC was not receiving checks that day.  *See* 15 U.S.C. § 1637(o)(2).  HSBC, however, seeks to justify the late fee charge on different grounds.  It argues that Schwartz's payments were nonconforming, because Schwartz was obligated to make his October payment by means of a single check, whereas Schwartz, in separate envelopes, sent HSBC "multiple payment coupons or checks," one of $25 and another of $50,  both of which arrived on October 28, 2012.  This

method of payment, HSBC argues, violated its payment instructions.  *See supra* p. 6.  And, HSBC argues, under Regulation Z, it was entitled to specify reasonable requirements for accepting and crediting nonconforming payments, including its policy of delaying the crediting of nonconforming payments for five days.  *See* 12 C.F.R. § 1026.10(b)(1) & (2) and § 226.10(b)(1) & (2); *see also Trombley v. Bank of Am. Corp.*, 675 F. Supp. 2d 266, 272 (D.R.I. 2009) ("§ 226.10 expressly permits creditors to impose requirements for making payments and to delay crediting nonconforming payments for up to five days.").  On this basis, HSBC argues, it had no "enforceable obligation" to credit the nonconforming payment as having been received in a timely manner.  Absent that obligation, HSBC argues, Schwartz fails to state a claim.

Were that HSBC's only argument for dismissal, the Court would sustain Schwartz's claim as plausible, and deny the motion to dismiss as to this episode.  Schwartz alleges that he sent a conforming payment—a $25 check payable to HSBC, in an envelope also containing the payment coupon—and that that payment was timely received, on Monday, October 29, 2012. Am. Compl. ¶ 15.  And HSBC's policy does not, at least explicitly, treat as nonconforming the situation in which a cardmember sends it, in addition to such a conforming payment, another envelope containing a second payment towards the same monthly balance.  HSBC's policy does prohibit sending an envelope that includes "multiple payment coupons or checks."  But the policy is silent as to the situation in which a cardmember, during a single month, sends it multiple envelopes, each containing a separate payment; HSBC does not clearly state that such conduct is non-compliant so as to subject the cardholder to a late fee.  Therefore, whether the late fee was imposed for the reason Schwartz postulates (because a Sunday payment was treated as late), or the reason HSBC proffers (because payments were sent in multiple envelopes, in ostensible violation of HSBC's policy) the Amended Complaint plausibly alleges that HSBC

lacked a basis for imposing a late fee.  On a motion to dismiss, it is not for the Court to engage in

factfinding as to the basis for HSBC's imposition of the late fee or to rule in HSBC's favor on

the basis of a policy whose application to the facts is unclear.  Viewed in the light most favorable

to Schwartz, it is not evident on its face that his dual payments violated HSBC's policy.  His

claim therefore plausibly alleges a violation of 15 U.S.C. § 1637(o)(2).

However, to state a claim, Schwartz also must seek a remedy that he has not already

received.  Although the Amended Complaint formally demands "[a]ctual damages and restitution

resulting from the Bank's unlawful categorization of payments as late," Am. Compl. at 14(6), at

argument, Schwartz's counsel, acknowledged that Schwartz did not suffer any actual damages.

Tr. 37–38.  The parties agree that HSBC, before the filing of this lawsuit, reversed the $19 late

fee and credited that amount to Schwartz "in a subsequent month . . . because of super storm

Sandy."  *Id.* at 37.  Schwartz's attorney argued that Schwartz is, nonetheless, eligible for

statutory damages.  *See id.* at 38.

But 15 U.S.C. § 1637(o)(2), the TILA provision on which Schwartz bases this claim,

does not provide for statutory damages.[9]  It is not among those subsections enumerated in

§ 1640(a), and "[c]ourts in this district have consistently disallowed statutory damages" for

violations not enumerated therein.  *Rubinstein v. Dep't Stores Nat'l Bank*, No. 12 Civ. 8054

(AJN), 2013 WL 3817767, at *2 (S.D.N.Y. July 22, 2013); *see also Turk*, 2001 WL 736814, at

*2 (no statutory damages for violation of section of the statute not enumerated in § 1640).

---

[9] At argument, Schwartz's attorney stated that the rationale for awarding statutory damages for
the late fee charges could be found in "[15 U.S.C. §] 1640(c) or (d)" which enumerate "other
violations [] eligible for statutory damages."  Tr. 39.  Neither of those subsections applies here.
Subsection (c) allows creditors a defense for "unintentional violations" or "bona fide errors."
Subsection (d) limits recovery for transaction with "multiple obligors."

Because there are no damages for Schwartz to recover on this claim, this claim, too, must be dismissed. *See Kelen*, 763 F. Supp. 2d at 393–95.

## CONCLUSION

For the foregoing reasons, HSBC's motion to dismiss is granted. The Clerk of Court is directed to terminate the motions at docket numbers 7 and 14, and to close this case.


SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge


Dated: October 18, 2013
       New York, New York

19